1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                                  SAN JOSE DIVISION

7

8    M.H.,                                    Case No.  24-cv-03841-VKD

9                    Plaintiff,

10           v.                               **ORDER RE SOCIAL SECURITY
                                              APPEAL**
11   FRANK BISIGNANO,
                                              Re: Dkt. Nos. 13, 15, 16
12                   Defendant.

13

14           Plaintiff M.H.[1] challenges a final decision of the Commissioner of Social Security

15   ("Commissioner")[2] denying his application for disability insurance benefits under Title II of the

16   Social Security Act ("Act"), 42 U.S.C. § 423, *et seq.*  M.H. contends that the ALJ failed to provide

17   clear and convincing reasons for discounting his allegations of mental dysfunction, erred in her

18   evaluation of certain medical opinions, and failed to provide germane reasons for discounting the

19   lay witness report of M.H.'s wife.  The Commissioner maintains the ALJ's decision is supported

20   by substantial evidence and free of legal error.

21           The parties have filed their respective briefs.  Dkt. Nos. 13, 15, 16.  The matter was

22   submitted without oral argument.  Civil L.R. 16-5.  Upon consideration of the papers and the

23   relevant evidence of record, for the reasons set forth below, the Court reverses the Commissioner's

24

25   ---

     [1] Because orders of the Court are more widely available than other filings, and this order contains
26   potentially sensitive medical information, this order refers to the plaintiff only by his initials.  This
     order does not alter the degree of public access to other filings in this action provided by Rule
27   5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

28   [2] Frank Bisignano, the Commissioner of the Social Security Administration, is substituted for his
     predecessor pursuant to Federal Rule of Civil Procedure 25(d).

United States District Court
Northern District of California

decision and remands this case for further administrative proceedings consistent with this order.[3]

## I.     BACKGROUND

M.H. was 44 years old on September 17, 2019, the date he filed his application for disability insurance benefits.  AR[4] 59.  The record indicates that M.H. completed high school and three years of community college and that he previously worked as a software engineer from 1995 to 2018.  *See* AR 281, 391, 491.  M.H. stopped working initially on July 10, 2018 and unsuccessfully attempted to return to work in October 2018, January 2019, and March 2019.  AR 491.

On September 17, 2019, M.H. applied for disability insurance benefits, alleging disability beginning July 10, 2018 due to traumatic brain injury ("TBI") and TBI symptoms of nausea, inability to interact with people, poor memory, inability to visualize 3D space for long, vertigo, inability to fill out forms, being easily overstimulated from sensory stimuli, irregular sleep patterns, and damaged executive function.  *See* AR 59-60.  M.H.'s application was denied initially and on review.  AR 59-72, 74-90.  On April 13, 2021, an ALJ held a hearing (AR 31-58) and subsequently issued an unfavorable decision on June 30, 2021 (AR 15-26).  The Appeals Council denied M.H.'s request for review of the ALJ's decision on August 12, 2022.  AR 1-4.  On October 14, 2022, M.H. filed a complaint in the United States District Court for the Northern District of California seeking judicial review of the Commissioner's final decision.  AR 546-548.  On April 11, 2023, upon stipulation of the parties, the district court remanded M.H.'s case for further administrative proceedings and a new decision.  AR 557-558.

On remand, the ALJ held a new hearing on February 8, 2024, at which a vocational expert testified.  AR 512, 532-536.  On May 8, 2024, the ALJ issued a new decision, again finding that M.H. is not disabled.  AR 489-505.  The ALJ found that M.H. meets the insured status requirements of the Act through December 31, 2024 and that he has not engaged in substantial gainful activity since July 10, 2018, the alleged onset date.  AR 491-492.  The ALJ further found

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 4, 6.

[4] "AR" refers to the certified administrative record filed with the Court.  Dkt. No. 9.

that M.H. has the following severe impairments:  TBI, neurocognitive disorder, and alcohol abuse disorder.  AR 492.  However, the ALJ concluded that M.H. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.  *Id.*  The ALJ determined that M.H. has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> no climbing ladders, ropes, or scaffolds; avoid concentrated exposure to hazards such as unprotected heights and moving machinery; the individual is limited to simple tasks with only occasional interactions with coworkers and supervisors; the individual should have no public interactions; the individual is limited to occasional changes; and the individual would work best in an environment that is task oriented and does not require a specific production pace (i.e., clarified to mean performed in a work environment where there is not an external force that sets the pace of work, for example work with a conveyor belt or tandem, collaborative work).

AR 494.

In view of this RFC, the ALJ found that M.H. is unable to perform any past relevant work. AR 504.  However, the ALJ found that based on M.H.'s age, education, work experience, and RFC, M.H. could perform other jobs that exist in significant numbers in the national economy, such as assembler of small products, inspector and hand packager, and marker or pricer.  AR 504-505.  Accordingly, the ALJ concluded that M.H. was not disabled, within the meaning of the Act, from the alleged onset date of July 10, 2018 through the May 8, 2024 date of the ALJ's decision. AR 505.  The ALJ's decision is a final decision.  *See* 20 C.F.R. § 404.984.

M.H. filed the present action seeking judicial review of the decision denying his application for benefits.

## II.    LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v.*

*Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III.   DISCUSSION

    M.H. challenges several determinations made by the ALJ.  First, he argues that the ALJ failed to provide clear and convincing reasons for discounting M.H.'s allegations and testimony about his symptoms of mental dysfunction.  Second, he argues that the ALJ did not properly evaluate opinions from four medical sources.  Third, he argues that the ALJ did not provide germane reasons for discounting the lay witness report of M.H.'s wife.  Because the parties' arguments are at least partly informed by issues concerning the ALJ's evaluations of the medical opinions, the Court addresses those arguments first.

### A.   Medical Opinions

    M.H. contends that the ALJ did not properly evaluate the medical opinions of:  state agency consultative psychologist Molly Malone, Psy.D.; treating physician Julia Shaver, M.D.; treating chiropractor Colleen McCoy, D.C.; and treating mental health examiner Grayce Stratton, Psy.D.  The Commissioner maintains that the ALJ properly evaluated these medical opinions.

    Under the regulations that apply to R.R.'s application,[5] the Commissioner does not give

---

[5] The Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in March 2017 and apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R.

United States District Court
Northern District of California

specific evidentiary weight to medical opinions.  Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). An ALJ's decision, "including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Woods*, 32 F.4th at 787.

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision.  20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations.  20 C.F.R. § 404.1520c(b)(2).

### 1.    State Agency Consultative Psychologist Dr. Malone

M.H. contends that the ALJ failed to properly evaluate the opinion of state agency consultative psychologist Molly Malone, Psy.D.  Dkt. No. 13 at 9.  The Commissioner responds that the ALJ properly assessed Dr. Malone's opinion.  Dkt. No. 15 at 9.  The Court agrees with M.H.

### a.    Summary of Opinion

Dr. Malone conducted a comprehensive psychological evaluation of M.H. on April 1,

---

§ 404.1520c.  Because R.R.'s application was filed after March 27, 2017, these revised regulations apply to his case.

United States District Court
Northern District of California

2020.  AR 397-403.  Her diagnoses included unspecified neurocognitive disorder with psychiatric disturbance and mild alcohol use disorder.  AR 402.  Dr. Malone noted M.H. arrived on time for his appointment, had driven himself, and had adequate grooming.  AR 397-398.  M.H. reported he had suffered multiple head injuries and expressed difficulties with tracking, set-shifting, and following multiple-step directions.  AR 397.  He reported being easily overstimulated by sounds, is unable to be around groups of people for any extended period of time, and feels chronic irritability and decreased frustration tolerance.  *Id.*  M.H. stated these difficulties began approximately 25 years ago after he suffered a head injury in high school, but the symptoms worsened following his most recent head injury in 2018.  *Id.*

Dr. Malone observed that M.H. made fair eye contact, had a normal facial expression, interacted appropriately with the examiner throughout the evaluation, and did not exhibit bizarre behavior.  AR 398.  M.H. was alert and oriented, had normal speech, and exhibited fair attention and concentration.  AR 399.  Dr. Malone also noted that M.H.'s mood was dysthymic and his memory for recently learned information was poor.  *Id.*  She further noted that M.H.'s insight and judgment appeared to be limited.  *Id.*  M.H. reported that he is independent for basic activities of daily living, but he occasionally requires prompts to attend to tasks.  AR 398.  He reported that he can prepare simple meals, do light household chores, make change at the store, and manage funds independently.  AR 398, 403.

M.H. scored "extremely low" and "borderline" on the Wechsler Memory Scale test which assesses various memory and working memory abilities in individuals.  AR 401.  Dr. Malone noted that M.H.'s Wechsler Memory Scale's scores "suggest that in a work setting the claimant will have significant deficits with remembering simple and/or complex work tasks."  AR 402.  M.H.'s IQ score and working memory index score were both in the average range.  AR 400.  The working memory index requires "the claimant to repeat numbers, forward, backwards, and in sequential order in addition to performing basic mental mathematic calculations."  *Id.*

Dr. Malone found that M.H. has global deficits in memory functioning and mild deficits in sustained attention.  AR 403.  She stated that the deficits in work functioning are significant and not expected to improve with time.  *Id.*  Dr. Malone concluded that M.H. is not significantly

1    limited in performing simple and repetitive tasks and accepting instructions from supervisors, but

2    he has mild limitations in maintaining regular attendance in the workplace.  *Id.*  She further

3    concluded that M.H. has moderate limitations in his ability to complete a normal workday or

4    workweek without interruptions resulting from his psychiatric condition; ability to interact with

5    coworkers and with the public; and ability to deal with the usual stresses encountered in a

6    competitive work environment.  *Id.*  Dr. Malone also concluded that M.H. has significant

7    limitations in his ability to perform detailed and complex tasks; ability to perform work activities

8    on a consistent basis; and ability to perform work activities without special or additional

9    supervision.  *Id.*

10        The ALJ found Dr. Malone's opinion "not persuasive."  AR 500.  She explained that the

11   opinion was unsupported by the objective evidence and relied instead on M.H.'s self-report.  *Id.*

12   She further stated that Dr. Malone's observation that M.H.'s memory problems are lifelong is

13   inconsistent with the fact that M.H. was able to work successfully for many years at a highly

14   skilled job before the July 10, 2018 onset date.  *Id.*  The ALJ found Dr. Malone's opinion

15   inconsistent with M.H.'s memory index score of 95 which is within normal limits.  *Id.*  The ALJ

16   also found Dr. Malone's opinion inconsistent with observations by Megan Stafford, Psy.D., a state

17   agency psychological consultative examiner, who evaluated M.H. on January 17, 2020.  *See id.*;

18   AR 390.  The ALJ noted that Dr. Stafford stated that M.H. "was able to remember 3/3 items

19   immediately and 2/3 in three minutes, and he was able to repeat seven digits forward and five

20   digits backward."  AR 500 (citing AR 393).  The ALJ further noted that M.H. was able to

21   complete serial threes, calculate that seven quarters equaled $1.75, spell WORLD forward and

22   backward, and follow a three-step command.  *Id.*  The ALJ further found Dr. Malone's opinion

23   inconsistent because more recent testing performed in January 2024 showed M.H. scored "high in

24   memory abilities" and scored high in comprehension and problem-solving skills.  *Id.* (citing AR

25   671).

26        The ALJ also noted that M.H. was "not forthcoming about his alcohol use" because he told

27   Dr. Malone that he had no history of abusing drugs or alcohol, but prior records indicated M.H.

28   had reported consuming alcohol daily since July 2018 and M.H. testified at the administrative

United States District Court
Northern District of California

hearing that he continues to consume three beers a day. *Id.* (citing AR 392). Lastly, the ALJ explained that M.H.'s ability to maintain appropriate conversation with the examiner and drive independently further contradicted many of Dr. Malone's findings. *Id.*

### b.    Analysis

M.H. argues that the ALJ erred in evaluating Dr. Malone's opinion because the ALJ (1) failed to consider evidence supporting Dr. Malone's opinion, including memory testing results and a mental status examination; (2) failed to consider Dr. Malone's explanation for assessing moderate to significant mental limitations; (3) did not explain how M.H.'s working memory index score trumped or contradicted M.H.'s low scores on other memory testing; (4) inappropriately substituted her opinion of raw test scores for those of Dr. Malone; (5) improperly discounted Dr. Malone's opinion on the basis that she relied on M.H.'s self-report; (6) improperly considered that M.H. worked at a skilled job for years prior to his alleged onset of disability; (7) erred in finding M.H.'s failure to report his alcohol use to Dr. Malone as a reason to discount Dr. Malone's opinion; and (8) failed to properly evaluate consistency with regard to Dr. Malone's opinion. *See* Dkt. No. 13 at 11-14.

The Court disagrees with M.H.'s fourth contention—that the ALJ inappropriately interpreted raw test scores. The ALJ noted that M.H. received a working memory index score of 95. AR 500. There is no indication in the record that the score is a "raw test score" or that the ALJ attempted to interpret raw test scores as M.H. suggests. In fact, Dr. Malone's report says, "The claimant's index score of 95 is classified in the *Average* range." AR 400. The ALJ stating that M.H.'s score of 95 was "considered to be within normal limits" is not an attempt at expert interpretation, but rather a reasonable description of what Dr. Malone's report states regarding this test result. *See* AR 500.

However, the Court agrees with M.H.'s other arguments, as the explanations that the ALJ provided for discounting Dr. Malone's opinion are not supported by substantial evidence. Regarding supportability, the ALJ found that Dr. Malone's opinion regarding significant limitations is "not supported by the objective evidence." AR 500. Yet in the very next sentence, the ALJ noted, "This assessment relies on the Wechsler Memory Scale Flexible Approach," with

United States District Court
Northern District of California

no further explanation. *Id.*  The Wechsler Memory Scale Flexible Approach is "designed to assess various memory and working memory abilities in individuals ages 16-90."  AR 401.  M.H. scored either "extremely low" or "borderline" throughout the categories of immediate memory, delayed memory, auditory memory, and visual memory on the Wechsler Memory Scale Flexible Approach test. *Id.*  Dr. Malone concluded: "These scores suggest that in a work setting the claimant will have significant deficits with remembering simple and/or complex work tasks."  AR 402.  Contrary to the ALJ's evaluation, M.H.'s Wechsler Memory Scale Flexible Approach scores support Dr. Malone's opinion about his limitations.

Additionally, in evaluating supportability, the ALJ did not discuss Dr. Malone's mental status exam findings that M.H.'s "[m]emory for recently learned information was poor" and his "insight and judgment appeared to be limited."  AR 399.  The ALJ also did not consider Dr. Malone's explanations supporting her opinion as to M.H.'s limitations, such as "the claimant is significantly limited due to cognitive deficits" and "claimant is moderately limited due [to] tendency to become easily overwhelmed."  AR 403.

In sum, the ALJ's supportability findings are not supported by substantial evidence.

Regarding consistency, the ALJ found that Dr. Malone's opinion is inconsistent with other evidence in the record, including M.H.'s statements to medical providers, work history, scores on other memory tests, and certain activities of daily living.  Specifically, the ALJ observed that M.H. earned a score of 95 on the working memory index test.  AR 500.  As M.H. points out, the ALJ did not explain how she decided to give more weight to the working memory index score than M.H.'s low performance on the Wechsler Memory Scale Flexible Approach test.

The ALJ also found that Dr. Malone's opinion is inconsistent with the record because Dr. Malone relied on M.H.'s self-report.  AR 500.  Specifically, the ALJ suggested M.H.'s self-report is unreliable because M.H. stated he had memory issues since high school yet worked in a highly skilled job for many years despite these memory issues.  *Id.*  But there is no inconsistency here. M.H. reported to Dr. Malone that while he has had cognitive and emotional functioning issues since high school, the "symptoms have become exaggerated following his [] most recent head injury in 2018 when he was hit by a tree."  AR 397.  The fact that M.H. had memory issues since

9

high school and worked in a highly skilled job for many years *before* his alleged onset date does not contradict Dr. Malone's opinion that his work abilities are *now* moderately and significantly impaired following his head injury in 2018. Moreover, the Ninth Circuit has recognized that where a mental health provider relies in part on the claimant's self-reported symptoms but also relies on other objective evidence, it is error for the ALJ to reject the provider's opinion based on the premise that the claimant's self-reporting is unreliable. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (noting that psychiatric "[d]iagnoses will always depend in part on the patient's self-report" because "such is the nature of psychiatry").

The ALJ also noted that M.H. was "not forthcoming about his alcohol use," AR 500, suggesting that because M.H. denied a history of substance abuse and Dr. Malone relied on M.H.'s self-report, Dr. Malone's opinion is inconsistent with the record. This observation does not speak to the consistency of Dr. Malone's opinion. Dr. Malone reviewed M.H.'s prior records and correctly noted that M.H. had reported in 2020 that he consumed alcohol daily since July 2018. AR 398. There is no basis to infer that Dr. Malone was unaware of M.H.'s alcohol use, or that her opinion was impacted by M.H.'s failure to mention his alcohol use during the examination.

The ALJ also found that Dr. Malone's opinion is inconsistent with Dr. Stafford's January 2020 assessment noting that M.H. was able to "remember 3/3 items immediately and 2/3 in three minutes"; repeat seven digits forward and five digits backward; complete serial threes; calculate that seven quarters equaled $1.75; spell WORLD forward and backward; and follow a three-step command. AR 500 (citing AR 393). The ALJ also noted that Dr. Malone's opinion is inconsistent with more recent testing that Dr. Stratton performed in January 2024 that shows M.H. scored "high in memory abilities" and scored high in comprehension and problem-solving. *Id.* (citing AR 671). However, the ALJ failed to consider that in analyzing the same January 2024 testing results, Dr. Stratton noted that M.H. "demonstrated weak neurological organization at the pons area of the brain" which "affects and undermines working memory development that in turn significantly weakens cognition during periods of stress." AR 689. Dr. Stratton also stated that M.H. demonstrated right hemispheric dominance which "is not typical" and "often slows

United States District Court
Northern District of California

United States District Court
Northern District of California

cognitive functioning and related speed and fluency" and had Below Average scores in vision-based Semantic Content Learning that are expected to impair both productivity and accuracy in a job setting. *Id.* It was error for the ALJ to "cherry-pick" records that showed positive or normal results for M.H.'s condition without also considering records that reflected abnormal results. *See Garrison v. Colvin*, 759 F.3d 995, 1017 n.23, 1018 (9th Cir. 2014) (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014), *superseded by statute on other grounds* ("[T]reatment records must be viewed in light of the overall diagnostic record."); *Smith v. Kijakazi*, 14 F.4th 1108, 1115 (9th Cir. 2021) (quoting *Garrison*, 759 F.3d at 1017) (holding that it is error for an ALJ to pick out a few isolated instances of improvement because "in many mental health conditions, cycles of improvement and debilitating symptoms are a common occurrence") (citation modified). The ALJ erred in her evaluation of whether Dr. Malone's opinion is inconsistent with other evidence.

In sum, the ALJ's inconsistency findings are not supported by substantial evidence.

Accordingly, the Court concludes that the ALJ's stated reasons for finding Dr. Malone's opinion not persuasive are not supported by substantial evidence.

### 2. Treating Physician Dr. Shaver and Treating Chiropractor Dr. McCoy

M.H. argues that the ALJ failed to properly evaluate the medical source opinions of Julia Shaver, M.D., and Colleen McCoy, D.C. Dkt. No. 13 at 14-18. The Commissioner responds that the ALJ properly assessed Dr. Shaver's and Dr. McCoy's opinions. Dkt. No. 15 at 9, 11-13. The Court agrees with M.H. that the ALJ did not properly evaluate Dr. Shaver's opinion, but the Court disagrees with M.H. regarding Dr. McCoy's opinion.

#### a. Summary of Opinions

##### i. Dr. Shaver

Dr. Shaver is a physician who treated M.H. in February and March 2019. AR 286-289. In February 2019, approximately six months after his head injury, M.H. had a telephone visit with Dr. Shaver. AR 288-289. M.H. reported persistent symptoms that were disrupting his ability to work, including distraction, difficulty coping with communication, nausea, and brain fog. AR 289. He also reported having a hard time completing simple tasks such as helping his son with a

math project or reading out loud to his four-year-old for more than 20 minutes.  *Id.*  Dr. Shaver noted:  "On the phone [M.H.'s] tone is somewhat flat and his communication fluency is slow but clear and logical.  Has to take frequent pauses during his sentences."  *Id.*  She diagnosed M.H. with post-concussion syndrome and recommended partial workdays of two and a half hours daily for five days or five hours twice a week.  *Id.*

On March 15, 2019, Dr. Shaver wrote a work status report recommending modified work hours for M.H. and noting that he needs a "quiet environment and ability to set own work pace." AR 320.  On March 27, 2019, during an in-person visit with Dr. Shaver, M.H. reported continued difficulty completing tasks that require intense focus and working for a long time with other people.  AR 286.  He stated that on most days, he sits by himself in a quiet place.  *Id.*  Dr. Shaver noted that M.H. "still has some significant deficits (noise sensitivity, easy fatiguability, some depression/anxiety) attributable to postconcussion syndrome."  AR 287.  She recommended that M.H. continue working limited hours for the remainder of April 2019.  *Id.*

The ALJ found Dr. Shaver's opinion "partially persuasive."   The ALJ discounted the opinion because it did not include a "function-by-function assessment and [is] not supported by explanation or objective findings."  AR 500.  The ALJ reasoned that M.H.'s treatment with Dr. Shaver was limited (one telephone visit and one in-person visit), and that Dr. Shaver's assessments are "early opinions provided within less than 12 months of the claimant's TBI in July 2018."  *Id.*  The ALJ found Dr. Shaver's opinion persuasive only as to her assessment of M.H.'s limitations regarding production pace and reduced interactions because these limitations were consistent with other evidence in the record, including Dr. Stafford's opinion and Dr. Malone's opinion.  *Id.* (citing AR 394, 403).

### ii.    Dr. McCoy

Dr. McCoy, a chiropractor, began treating M.H. in July 2018.  AR 354.  In October 2019, Dr. McCoy prepared a written evaluation stating that M.H. is "extremely impaired and unable to perform many of his physical and mental activities related to his job," including "programming, advising mechanical engineers with solving IT problems, working with electronics, writing reports for model machines, writing calibrations, geometry fittings have become difficult, communicating

and visualizing programs, having a hard time remembering things, concentrating at meetings." AR 352. Dr. McCoy further noted that M.H. "still shows signs of confusion" and that M.H. requested that Dr. McCoy repeat questions during examinations. *Id.* She also reported that she had to help M.H. complete his intake form because of his mental inabilities and that there were numerous appointments where M.H. was unresponsive to questioning or needed extra time to answer questions, "perhaps due to his mental processing being affected." *Id.* Dr. McCoy acknowledged that her "specialty is not mentally focused," and said that she assessed M.H.'s mental difficulties by comparing him to other patients. *Id.*

The ALJ found Dr. McCoy's opinion "not persuasive" because it was not supported by explanation or any clinical findings, and because the limitations noted were "primarily mental and the assessment is vocational and outside of the chiropractor's area of practice." AR 500. The ALJ also found Dr. McCoy's opinion inconsistent with other objective findings in the record, including Dr. Stafford's assessment that M.H.'s eye and hand coordination were within normal limits (citing AR 390) and Dr. Stratton's January 2024 testing results noting that M.H. scored "high in memory abilities" and scored high in comprehension and problem-solving (citing AR 671). AR 500-501.

### b.    Analysis

#### i.    Dr. Shaver

M.H. argues that the ALJ erred in discounting Dr. Shaver's opinion on the basis that the assessment did not contain a function-by-function assessment; was not supported by explanation or objective findings; was an early opinion; and was based on limited treatment interactions with M.H. Dkt. No. 13 at 14-16. The Court agrees.

First, a treating physician's opinion must be evaluated according to the current regulations. Those regulations require consideration of supportability and consistency, and permit consideration of other factors. 20 C.F.R. § 404.1520c; *see also Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). To the extent older authority suggests that an ALJ may discredit an opinion for failing to provide a function-by-function assessment, such authority is inconsistent with the

13

1    current regulations.  *See, e.g., Morgan*, 169 F.3d at 601 (finding substantial evidence supported

2    ALJ's discounting of opinion where examining psychologist "identified characteristics that might

3    limit [claimant's] ability to work on a sustained basis" but "did not explain *how* these

4    characteristics precluded work activity in [claimant's] case").  In any event, while a medical

5    opinion that comments specifically on how a claimant's symptoms impact specific work-related

6    functions may be particularly helpful, the ALJ discounted Dr. Shaver's opinion *because* it did not

7    contain a function-by-function assessment.  This was error.  *See Averill-Marcogliese v. Kijakazi*,

8    No. 21-cv-00277-SKO, 2023 WL 4108429, at *7 (E.D. Cal. June 21, 2023) (ALJ erred in citing

9    lack of function-by-function analysis as reason to discount treating physician's opinion).

10    Second, the ALJ's finding that Dr. Shaver's opinion was not supported by explanation or

11    objective findings mischaracterizes the record.  Dr. Shaver did include explanations for the work

12    limitations she recommended.  In February 2019, Dr. Shaver noted M.H. had "significant

13    functional deficits" and was "[u]nable to tolerate his typical work or daily activity."  AR 289.  In

14    March 2019, Dr. Shaver noted that M.H. "still has some significant deficits (noise sensitivity, easy

15    fatiguability, some depression/anxiety)."  AR 287.  Dr. Shaver's findings and explanations support

16    her recommendations regarding M.H.'s work limitations.

17    Third, the ALJ does not explain why the timing of Dr. Shaver's treatment sessions with

18    M.H. undermines the persuasiveness of her findings and opinion.  Dr. Shaver treated M.H. on two

19    occasions approximately six to seven months after M.H.'s head injury.  *See* AR 286-288.  The fact

20    that Dr. Shaver's opinion was provided "within less than 12 months of the claimant's TBI in July

21    2018" has no bearing on whether the opinion itself is adequately supported or whether it is

22    consistent with other evidence in the record.

23    Finally, the Court agrees with M.H. that the fact that he had limited treatment with Dr.

24    Shaver is not, in itself, a basis to discount Dr. Shaver's opinion.  *See Brown v. Berryhill*, No. 17-

25    cv-02834-JCS, 2018 WL 4700348, at *17 (N.D. Cal. Sept. 29, 2018) (discounting an opinion

26    based on a single visit "would render all examining opinions superfluous, and is contrary to the

27    requirement that the ALJ consider all relevant evidence, including medical opinions of examining

28    doctors.") (citation modified).  However, in addition to supportability and consistency, the ALJ is

United States District Court
Northern District of California

14

permitted to consider other factors in evaluating the persuasiveness of a medical opinion, including the medical source's "relationship with the claimant." 20 C.F.R. § 404.1520c. The ALJ did not err in noting that Dr. Shaver examined M.H. on only two occasions, but that observation does not provide a basis for discounting Dr. Shaver's opinion in the absence of substantial evidence of unsupportability and/or inconsistency.

Accordingly, the Court concludes that the ALJ's stated reasons for finding Dr. Shaver's opinion only partially persuasive are not supported by substantial evidence.

### ii.    Dr. McCoy

M.H. argues the ALJ erred in discounting Dr. McCoy's opinion on the basis that Dr. McCoy's opinion was not supported by explanation or any clinical findings; was outside of the scope of Dr. McCoy's expertise; and was inconsistent with other objective findings in the record. Dkt. No. 13 at 16-18. The Court disagrees.

As M.H. points out, Dr. McCoy provided some explanations for her opinion: she compared M.H. to other patients and observed M.H.'s difficulties in completing paperwork and answering questions. AR 352. However, the ALJ correctly noted that these explanations do not support Dr. McCoy's opinion that M.H. is "extremely impaired." *See id.* Moreover, as M.H. concedes, Dr. McCoy's opinion concerns matters outside of her area of practice as a chiropractor. AR 500. M.H. argues that "the ALJ erred in focusing on Dr. McCoy's specialization while ignoring the factor of consistency." Dkt. No. 13 at 17. The regulations expressly authorize the ALJ to consider a medical source's specialization as a factor when evaluating a medical opinion. 20 C.F.R. § 404.1520c(c)(4). The ALJ did not err in considering Dr. McCoy's area of specialization. The ALJ also did not "ignor[e] the factor of consistency," as M.H. claims. *See* Dkt. No. 13 at 17. She observed that Dr. McCoy's opinion that M.H. has extreme impairments that render him unable to perform both physical and mental activities related to his job is inconsistent with other evidence in the record. AR 500-501 (citing AR 390, 671). The ALJ's evaluation of Dr. McCoy's opinion as "not persuasive" is supported by substantial evidence, and the Court finds no error here.

In sum, the Court concludes that the ALJ's stated reasons for discounting Dr. Shaver's

1    opinion as "partially persuasive" are not supported by substantial evidence, but her reasons for

2    discounting Dr. McCoy's opinion as "not persuasive" are supported by substantial evidence.

3                    **3.    Treating Mental Health Examiner Dr. Stratton**

4          M.H. argues that the ALJ erred by finding that the opinion of treating mental health

5    examiner Grayce Stratton, Psy.D. is "partially persuasive."  Dkt. No. 13 at 18-21.  The

6    Commissioner argues the ALJ properly evaluated Dr. Stratton's opinion.  Dkt. No. 15 at 14-15.

7    The Court agrees with M.H.

8                            **a.    Summary of Opinion**

9          Dr. Stratton examined M.H. in December 2023 and January 2024.  AR 644.  In a January

10   2024 mental health impairment report, Dr. Stratton noted that M.H.'s pace of speech was slower

11   than normal and decreased over time, and that his "[e]nergy was variable and decreased

12   precipitously to a point where mental work could no longer be produced and claimant showed

13   physical symptoms."  *Id.*  She also stated that M.H.'s mood was dysthymic, his memory for

14   recently learned information was poor, and his impairment has lasted over eight years.  AR 644-

15   645.

16         Dr. Stratton opined that M.H. had a moderate limitation in understanding information and

17   that his comprehension difficulty can be marked at times.  AR 645.  She found that M.H. had an

18   extreme limitation in remembering and applying information; marked to extreme limitation in

19   interacting with others, although if an encounter were inherently low stress and dialogue were

20   brief (less than three minutes), he would have a mild limitation; mild to extreme limitations in

21   concentrating, persisting, or maintaining pace; and a marked impairment in adapting and

22   managing oneself.  AR 645-646.  Dr. Stratton concluded that deficits in M.H.'s work performance

23   capacity were "Highly Significant" and included deficits in short-term memory, working memory,

24   attention, consistency of neural processing, executive functioning, eye tracking regularity, balance,

25   and physiological functioning.  AR 653, 655.

26         The ALJ found Dr. Stratton's opinion "only partially persuasive, as it is overly restrictive."

27   AR 501.  While the ALJ found that Dr. Stratton's opinion is supported by objective evidence

28   showing a cognitive disorder and decline, she concluded that it was "not consistent with the

United States District Court
Northern District of California

1    claimant's good functional abilities, including ability to drive, grocery shop, do light household

2    chores, read, use social media, play games, trade stocks, and cook" and with January 2024 test

3    results showing above average performance, including high scores in memory, comprehension,

4    and problem-solving. *Id.* (citing AR 392, 398, 512-537, 661-694).

5                              **b.    Analysis**

6            M.H. argues that the ALJ's evaluation of Dr. Stratton's opinion is flawed for the following

7    reasons:  (1) the ALJ's evaluation of supportability discussed results from one test, while

8    overlooking other supporting evidence; and (2) the ALJ's evaluation of consistency

9    mischaracterized M.H.'s daily activities and failed to identify any actual inconsistencies.  Dkt. No.

10   13 at 20-21.

11           With regard to supportability, the ALJ concluded that Dr. Stratton's opinion is "supported

12   by objective evidence showing a cognitive disorder and decline."  AR 501.  However, the ALJ

13   also found that the opinion is "inconsistent with [Dr. Stratton's] own test results . . . showing

14   above average performance, including high scores in memory, comprehension, and problem-

15   solving." *Id*.  Although that ALJ uses the term "inconsistent" here, the ALJ is commenting on

16   whether Dr. Stratton's own test results *support* her opinion.  *See Woods*, 32 F.4th at 793 n.4 ("[T]o

17   avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent'

18   and 'supported'—with precision.").

19           The Court agrees with M.H. that the ALJ erred in assessing whether the January 2024 test

20   results support or undermine Dr. Stratton's opinion.  *See* AR 501 (citing AR 661-694).  While the

21   ALJ correctly noted that M.H. received high scores in the areas of memory, comprehension, and

22   problem-solving, the ALJ did not consider the rest of Dr. Stratton's report.  For example,

23   elsewhere in the same report, Dr. Stratton noted that M.H. "demonstrated weak neurological

24   organization at the pons area of the brain" which "affects and undermines working memory

25   development that in turn significantly weakens cognition during periods of stress."  AR 689.  She

26   further noted that M.H. demonstrated a mental midline processing weakness which can "markedly

27   undermine task performance in a variety of settings," and that he showed right hemispheric

28   dominance which "often slows cognitive functioning and related speed and fluency."  *Id*.  The

United States District Court
Northern District of California

17

1    ALJ improperly focused on one set of test results and ignored the remainder.  *See Ahearn*, 988

2    F.3d at 1115 ("To determine whether substantial evidence supports the ALJ's determination, we

3    must assess the entire record, weighing the evidence both supporting and detracting from the

4    agency's conclusion.") (citation omitted); *see also Williams v. Colvin*, No. ED CV 14-2146-PLA,

5    2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to

6    support the conclusion that a claimant is not disabled, but must consider the evidence as a whole

7    in making a reasoned disability determination.") (citing *Holohan v. Massanari*, 246 F.3d 1195,

8    1207 (9th Cir. 2001)).  This was error.

9        Dr. Stratton's opinion reflects her interpretation of all test results, and the ALJ's finding

10    that this opinion is not supported by, or is inconsistent with, Dr. Stratton's own test results, is not

11    supported by substantial evidence.

12        The Court also agrees with M.H. that the ALJ erred to the extent she concluded that Dr.

13    Stratton's opinion is inconsistent with evidence of M.H.'s daily activities.  The Court discusses the

14    evidence of M.H.'s daily activities below.

15        **B.    M.H.'s Subjective Symptom Testimony**

16        M.H. argues that the ALJ failed to provide clear and convincing reasons for discounting

17    M.H.'s allegations and testimony of mental dysfunction.  Dkt. No. 13 at 2.  The Commissioner

18    contends that substantial evidence supports the ALJ's evaluation of M.H.'s testimony.  Dkt. No.

19    15 at 3.  The Court agrees with M.H.

20        An ALJ is not "required to believe every allegation of disabling pain" or other non-

21    exertional impairment.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir.

22    2014) (citation modified).  In assessing a claimant's subjective testimony, an ALJ conducts a two-

23    step analysis.  First, "the claimant 'must produce objective medical evidence of an underlying

24    impairment' or impairments that could reasonably be expected to produce some degree of

25    symptom."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*,

26    80 F.3d 1273, 1281-82 (9th Cir. 1996)).  If the claimant does so, and there is no affirmative

27    evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the

28    symptoms "only by offering specific, clear and convincing reasons for doing so."  *Id.* (quoting

United States District Court
Northern District of California

1    *Smolen*, 80 F.3d at 1281); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("We

2    therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing

3    reasons.").  "Factors that an ALJ may consider in weighing a claimant's credibility include

4    reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily

5    activities, and unexplained, or inadequately explained, failure to seek treatment or follow a

6    prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation

7    modified).  Although lack of medical evidence cannot form the sole basis for discounting a

8    claimant's subjective testimony, it is a factor that the ALJ can consider in his credibility analysis.

9    *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

10                      **1.        Summary of Testimony**

11            At the administrative hearing on February 8, 2024, M.H. alleged that he became disabled

12    after sustaining a concussion on July 8, 2018.  *See* AR 522.  He testified that when he previously

13    attempted to return to work, he had to stop working for over a month to recover.  AR 525.  M.H.

14    testified that he has memory issues, gets easily stressed out, and experiences shaking and his brain

15    shutting down.  *Id.*

16            M.H. testified that he can only watch over his children for a few minutes at a time before

17    needing to step away.  AR 527.  He stated that he owns stocks and his wife tells him when to sell

18    them.  *Id.*  M.H. stated that when his wife directs him to sell stocks, it will take him a week to sell

19    them because it is "hard for [him] to do it."  *Id.*  He also said his wife "does almost everything"

20    around the house because he cannot handle being around people and it is hard for him to complete

21    tasks.  AR 528.  M.H. testified that if his wife gives him a list of small tasks, he can do some of

22    the tasks, but "[t]hat doesn't happen often."  AR 529.  He said he occasionally helps with diaper

23    changes, tucks his children into bed, straightens blankets, and cooks once a week.  *Id.*  M.H. said

24    that after he cooks, he cannot eat because he is too stressed out from cooking, so he hides in the

25    carport.  AR 529-530.  M.H. said he is generally polite with others, but when he gets stressed, he

26    goes into fight or flight mode and can get snappy with people.  AR 531.

27            At his January 2020 mental evaluation with Dr. Stafford, M.H. reported feeling nausea and

28    feeling overwhelmed when talking to multiple people or hearing loud noises.  AR 390-391.  He

1    stated that his short-term memory is not good and that he has difficulty filling out forms.  AR 391.

2    M.H. said he can adequately handle some responsibilities of daily living including showering and

3    brushing his teeth once every three days, doing limited household duties, and keeping

4    appointments.  AR 392.  He stated he could drive, periodically shop for groceries, and make basic

5    meals.  *Id.*

6                    **2.    Analysis**

7            The ALJ concluded that M.H.'s medically determinable impairments could reasonably

8    cause the symptoms M.H. reported.  AR 502.  However, the ALJ also found that M.H.'s

9    statements concerning "the intensity, persistence and limiting effects of these symptoms are not

10   entirely consistent with the medical evidence and other evidence in the record . . . ."  *Id.*  As the

11   ALJ did not identify any affirmative evidence of malingering, the ALJ was required to provide

12   specific, clear, and convincing reasons for this determination.

13          The ALJ explained that M.H.'s allegations of mental dysfunction are inconsistent with the

14   medical evidence and other evidence in the record because:  (1) M.H. could handle responsibilities

15   of daily living; (2) his treatment history for his mental impairments is limited; (3) M.H. had

16   average and above average scores on certain tests; and (4) M.H. continued to consume alcohol

17   despite being advised to stop.  AR 503.  M.H. argues that the ALJ's stated reasons are unsupported

18   and are not clear and convincing reasons for discounting his allegations of mental dysfunction.

19   Dkt. No. 13 at 9.  The Court agrees.

20          First, although the ALJ reviewed and summarized M.H.'s statements regarding his

21   subjective symptoms (*see* AR 495-497), she erred insofar as she did not specify which testimony

22   she found not credible and what evidence suggests that those allegations are not credible.  *Lambert*

23   *v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  Addressing M.H.'s allegations of mental

24   dysfunction collectively, the ALJ explained that "[d]espite his TBI and neurocognitive deficits, the

25   claimant is able to perform simple tasks," including: (1) maintaining hygiene and grooming by

26   showering and brushing his teeth once every three days; (2) doing limited household duties; (3)

27   keeping appointments; (4) driving; (5) periodically going to the grocery store; (6) preparing simple

28   meals; (7) making change at the store; (8) caring for his children occasionally; and (9) managing a

United States District Court
Northern District of California

1  stock portfolio.  AR 503.  M.H. argues that these activities are not inconsistent with his reported

2  symptoms of mental dysfunction due to his TBI.  Dkt. No. 13 at 6-8.

3          "An ALJ may properly come to an adverse credibility determination as to subjective []

4  testimony based upon activities of daily living where: (1) the activities of daily living contradict

5  the claimant's other testimony; and/or (2) the activities of daily living meet the threshold for

6  transferable work skills."  *A.P. v. Kijakazi*, No. 23-cv-01184-EMC, 2024 WL 116307, at *9 (N.D.

7  Cal. Jan. 10, 2024).  However, ALJs must be "especially cautious" in concluding that daily

8  activities are inconsistent with subjective symptom testimony "because impairments that would

9  unquestionably preclude work and all the pressures of a workplace environment will often be

10 consistent with doing more than merely resting in bed all day."  *Garrison*, 759 F.3d at 1016; *see*

11 *also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted

12 that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping,

13 driving a car, or limited walking for exercise, does not in any way detract from her credibility as to

14 her overall disability."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts,

15 including this one, have recognized that disability claimants should not be penalized for

16 attempting to lead normal lives in the face of their limitations.").

17         The ALJ did not explain how or why any of M.H.'s daily activities are inconsistent with

18 his symptom testimony.  None of these activities are obviously comparable to the activities M.H.

19 might be expected to perform in the workplace.  Moreover, to the extent the ALJ relied on

20 evidence that M.H. "managed a stock portfolio" as a reason to discount his symptom testimony,

21 *see* AR 492-493, 495, 501, 503, the record does not support the ALJ's characterization of this

22 activity.  To the contrary, M.H. testified that his wife instructs him when to sell stocks which he

23 then does with difficulty.  AR 527.  The record does not show that M.H. does anything else with

24 his stock portfolio, such as actively managing it or engaging in the kind of trading activity that

25 might require sustained concentration or judgment.  In these circumstances, the Court finds that

26 the ALJ failed to provide clear and convincing reasons supported by substantial evidence for

27 discounting M.H.'s allegations based on his daily activities.

28         In evaluating M.H.'s allegations, the ALJ also noted that M.H. "received no formal mental

United States District Court
Northern District of California

health treatment, including psychotherapy or psychotropic medication," did not attend counseling, and had a lapse in treatment from August 2020 to November 2022 with "very minimal treatment thereafter." AR 503. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Similarly, "[a]n unexplained or inadequately explained failure to seek treatment" may be considered when evaluating a claimant's allegations of subjective symptoms. *Tommasetti*, 533 F.3d at 1039. However, "where the claimant has a good reason for not seeking more aggressive treatment," a conservative course of treatment "is not a proper basis for rejecting the claimant's credibility." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). While M.H. did not receive treatment such as psychotherapy, medication, or counseling, there is substantial evidence showing M.H. actively sought other types of treatment for his symptoms which the ALJ acknowledged. *See* AR 503 (citing AR 391) (stating M.H. sought osteopathy, chiropractic treatment, craniosacral therapy, and NAET); *see also* AR 646 (Dr. Stratton noting that M.H. "was intermittently seeking and availing himself of treatments that appeared to be promising"); Dkt. No. 16 at 1-2 (describing M.H.'s efforts to seek treatment, including undergoing cognitive testing).

The ALJ also considered various positive test scores as a reason to discount M.H.'s allegations about mental dysfunction. AR 503. She noted that M.H.'s IQ fell in the average range (citing AR 396-403); M.H. scored a 27/30 on the Montreal Cognitive Assessment in March 2019, which is normal (citing AR 287); M.H. showed good abilities with comprehension skills and high scores in memory abilities and problem-solving abilities (citing AR 671); and M.H. withstood the stress of neuropsychological testing and performed well. *Id.* As noted above, there is substantial evidence demonstrating that M.H. also had low scores on other tests, and this performance on such tests tended to drop off the longer he was engaged in performing the test. *See, e.g.*, AR 401 ("extremely low" and "borderline" scores on the Wechsler Memory Scale test); AR 644 (noting M.H.'s memory for recently learned information was poor after he missed two out of five single word items with a 30-minute delay); AR 648 (noting M.H.'s "performance was excellent until there began a lag and then a drop off capacity with plummeting scores").

1       Lastly, the ALJ discussed the fact that M.H. continued to consume alcohol despite being

2 advised by his medical providers to stop as a reason for discounting M.H.'s allegations.  AR 503.

3 The connection between M.H.'s continued alcohol use and his credibility is unclear, and the ALJ

4 does not explain her reasoning for discussing M.H.'s alcohol use.

5       In sum, the Court concludes that the ALJ failed to provide clear and convincing reasons

6 supported by substantial evidence for discounting M.H.'s allegations and testimony of mental

7 dysfunction.

8       **C.**      **Third Party Lay Witness Statements**

9       M.H. argues that the ALJ failed to provide germane reasons for discounting the lay witness

10 report of his wife, J. Carman.  Dkt. No. 13 at 22.  The Commissioner responds that the ALJ

11 offered sufficient reasons for discounting Ms. Carman's statements.  Dkt. No. 15 at 15-16.  The

12 Court agrees with M.H.

13       An ALJ is not required to articulate how she considered evidence from nonmedical

14 sources.  20 C.F.R. § 1520c(d).  However, the ALJ must "articulate [her] consideration of lay-

15 witness statements and [her] reasons for discounting those statements."  *Joseph M. R. v. Comm'r*

16 *of Soc. Sec.*, No. 3:18-CV-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019).  *But see*

17 *Thomas v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01787-PHX-MTL, 2022 WL 292547, at *3

18 (D. Ariz. Feb. 1, 2022) ("The Ninth Circuit has not yet addressed the meaning of this provision or

19 whether the germane reasons rule survives its enactment, and district courts in this Circuit have

20 split on the issue.").

21       **1.**      **Summary of Statements**

22       On October 22, 2019, Ms. Carman completed a "function report" for M.H.'s benefits

23 application, in which she reported that M.H. cannot "handle multiple stimuli at once – two people

24 talking, two separate thoughts, etc.," and that when exposed to multiple stimuli, M.H. "gets

25 nauseous and goes into fight or flight."  AR 230.  She also stated that because "the part of

26 [M.H.'s] brain that makes him start projects is not functioning," M.H. spends most of his time

27 doing nothing.  *Id.*  Ms. Carman said M.H.'s daily activities include going outside and sitting by

28 himself and playing games on his phone.  AR 231.  She said that M.H. watches their children

United States District Court
Northern District of California

alone "very occasionally," and that most of the time, she is also present. *Id.* Ms. Carman said that when she occasionally takes their children on vacation, M.H. is responsible for caring for their dog and two cats. *Id.* Ms. Carman reported that M.H. is unable to shop for new clothes, so his clothes are torn and ragged, and cooking is difficult for him because he feels overstimulated in the house. *Id.* She has to remind M.H. to eat and to take vitamins or supplements. AR 232. Ms. Carman stated that M.H. can prepare simple meals for himself, such as frozen meals, sandwiches, and cut cheese, once every other day. *Id.* She said M.H. can perform household repairs, but he would start chores and often not finish them, working on them for maybe fifteen minutes at a time and needing constant reminders. *Id.* Ms. Carman stated that M.H. can drive a car and go outside alone; handle a savings account; count change; and use a checkbook or money orders. AR 233. She stated that he is unable to pay bills. *Id.* Ms. Carman stated that M.H.'s hobbies include woodworking, watching TV, and playing computer games, but he lacked motivation to woodwork. AR 234.

The ALJ stated that she considered Ms. Carman's function report but discounted her statements as follows:

> While third party statements can generally be helpful in making findings regarding the claimant's ability to complete activities of daily living; maintain concentration, attention, and pace; engage in social activities; adapt and manage oneself, and function in general, they are, pursuant to 20 CFR 404.1520c and 416.920c, considered evidence from a nonmedical source. As such, the undersigned need not articulate how this evidence was considered in terms of persuasiveness. The observations at Ex. 4E are, as one would expect, generally consistent with the claimant's testimony. However, as with the claimant's allegations, they are not consistent with the medical evidence of record.

AR 502.

## 2.    Analysis

M.H. argues that the ALJ failed to provide germane reasons for discounting Ms. Carman's statements. Dkt. No. 13 at 22-23. The Commissioner contends that the ALJ properly discounted Ms. Carman's statements because, like M.H.'s own subjective testimony, Ms. Carman's statements are not consistent with the medical evidence of record. Dkt. No. 15 at 16.

As discussed above, the ALJ cited medical evidence and other evidence in the record in assessing M.H.'s own testimony. The ALJ's evaluation of Ms. Carman's statements—which she found were "generally consistent with the claimant's allegations"—is based on the same evidence and reasoning. The Court has already concluded that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting M.H.'s own testimony regarding his mental dysfunction, and while the ALJ's assessment of Ms. Carman's statements need not meet this same standard, the ALJ has not provided any other reasons, specific to Ms. Carman's statements, beyond those the Court has already considered. Thus, to the extent that the ALJ *has* provided reasons for discounting Ms. Carman's statements, those reasons are not supported by substantial evidence in the record.

Accordingly, the Court concludes that the ALJ's decision to discount Ms. Carman's lay witness testimony is not supported by substantial evidence.

## IV.    DISPOSITION

For the reasons discussed above, the Court finds that remand is appropriate for further proceedings. *See Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018); 42 U.S.C. § 405(g). On remand, the ALJ shall reassess: (1) Dr. Malone's opinion; (2) Dr. Shaver's opinion; (3) Dr. Stratton's opinion; (4) M.H.'s allegations and testimony regarding his symptoms of mental dysfunction; (5) Ms. Carman's lay witness statements; and (6) M.H.'s RFC, as appropriate. It is not the Court's intent to limit the scope of the remand.

## V.    CONCLUSION

Based on the foregoing, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: September 30, 2025

Virginia K. DeMarchi
United States Magistrate Judge